IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| MATTHEW IVESTER, | |
| Plaintiff, | CIVIL ACTION NO.: 4:21-cv-238 |
| v. | |
| GEORGIA DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

## ORDER AND REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion to Dismiss, doc. 20, and Plaintiff's Motion to Combine Additional Facts and Statement to Civil Action, doc. 26. Plaintiff filed a Response, opposing Defendants' Motion to Dismiss. Doc. 25. For the following reasons, I **GRANT as unopposed** Plaintiff's "Motion to Combine Additional Facts and Statement to Civil Action." I also **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

### BACKGROUND

Plaintiff filed this complaint, asserting claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"). Doc. 1. Plaintiff is currently incarcerated at Coastal State Prison ("CSP") in Garden City, Georgia. Doc. 1 at 3. Plaintiff's claims focus on both the general conditions of the administrative segregation building and three specific incidents of deliberate

indifference to his serious medical needs at CSP. On August 1, 2021, Plaintiff alleges he had a seizure but received no medical care for that seizure. Doc. 1 at 7. On August 16, 2021 and August 19, 2021, Plaintiff alleges his breathing machine was turned off for several hours. Id. at 7–8.

After frivolity review, the Court dismissed Plaintiff's § 1983 claims against Defendant Georgia Department of Corrections ("GDC") and Plaintiff's ADA claim against Defendants Ward, Benton, and Jones. Doc. 12. However, the Court allowed Plaintiff's Eighth Amendment claims against Defendants Ward, Benton, Jones, and Lt. Name Unknown to proceed, as well as his ADA claims against Defendant GDC. Id.

**DISCUSSION**

I.  **Plaintiff's Motion to Combine Additional Facts and Statement to Civil Action**

Plaintiff filed a document titled "Motion to Combine Additional Facts and Statement to Civil Action Complaint" on April 4, 2022, contemporaneous with his Response to Defendants' Motion to Dismiss. Doc. 26. Plaintiff describes several facts that occurred long after this lawsuit was filed. Specifically, Plaintiff asserts he was threatened by other inmates, who were members of a gang, and he informed prison officials about the threats. Id. at 2. Plaintiff alleges Sergeant Brooks and Defendant Jones failed to address his concerns about the threats or permit him to move to another unit, at least initially. Plaintiff alleges he refused to comply with Sergeant Brooks' order for Plaintiff to return to his original unit, and then Sergeant Brooks "smacked" Plaintiff in the face, lifted Plaintiff partially from his wheelchair, and pepper sprayed Plaintiff. Id. at 2–3. Plaintiff alleges he was then placed in a different cell, but with a member of the same gang that threatened him previously, and that inmate attacked Plaintiff. Id. at 3. Plaintiff closes with a statement that these events have placed him in "imminent danger" of

serious physical injury and have interfered with his ability to litigate this case.  Id. at 4–5. Plaintiff argues his claims should not be dismissed.  Id.

It is unclear what relief Plaintiff is requesting in this filing.  Plaintiff does not ask to add any claims or new Defendants to the case.  Notably, Plaintiff enumerated his various claims in his original Complaint, but he does not do so in his "Motion to Combine Additional Facts and Statement to Civil Action Complaint."  Plaintiff does not appear to seek to add any new parties. Plaintiff's reference to "imminent danger" suggests he may be attempting to address the "three-strikes" provision in § 28 U.S.C. § 1915(g), but there is no indication that provision applies in this case.

Liberally construing Plaintiff's filing, I conclude Plaintiff intends to provide the Court with additional facts concerning the claims he asserted in his original Complaint and to provide the Court with an explanation of difficulties he has experienced during this litigation.  I do not construe Plaintiff's filing as an effort to add any new claims or new parties.  Therefore, I construe Plaintiff's "Motion to Combine Additional Facts and Statement to Civil Action Complaint" as a motion to amend.  Federal Rule of Civil Procedure 15 allows a party to amend a pleading once as a matter of course within 21 days after the service of a motion to dismiss.  Fed. R. Civ. P. 15(a)(1)(B).  Plaintiff filed the construed Motion to Amend within 21 days after Defendants served their Motion to Dismiss.  Thus, the Court **GRANTS** Plaintiff's Motion.  The Court will consider the facts alleged in Plaintiff's construed Motion to Amend when evaluating Defendants' Motion to Dismiss.[1]

---

[1] However, the facts Plaintiff alleges in his construed Motion to Amend have no bearing on the merits of Defendants' Motion to Dismiss, as they argue Plaintiff failed to exhaust available administrative remedies.  Regardless, I have reviewed and considered Plaintiff's additional factual allegations.

3

To be clear, although the Court grants Plaintiff's construed Motion to Amend, Defendants' pending Motion to Dismiss is not moot. An original complaint still has legal effect if "the amendment specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982) (citation omitted). The title of the construed Motion to Amend indicates Plaintiff seeks to adopt his initial Complaint and add to it. Doc. 26 at 1.

## II.     Defendants' Motion to Dismiss

Defendants argue Plaintiff's original Complaint should be dismissed because Plaintiff did not exhaust his administrative remedies prior to filing his Complaint. Doc. 20-1 at 7. Plaintiff admits he did not file a grievance but argues the grievance process was not available to him. Doc. 25-1 at 1–2.

### A.     Prison Litigation Reform Act's Exhaustion Requirements

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 578 U.S. 632, 639–40 (2016) (finding the PLRA

requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v.

6

Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a).  541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., No 17-14278, 2018 WL 3861351, at *1 (11th Cir. 2018).  This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust.  Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824.  "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion.").  After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209).  Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding

8

exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### C. Applying <u>Turner</u>

#### 1. *The Georgia Department of Corrections' ("GDC") administrative remedies.*

CSP utilizes the GDC procedures for prisoner grievances. Doc. 20-2 at 2. The GDC's grievance policies are set out in Standard Operating Procedure ("SOP") 227.02. <u>Id.</u> at 2–3. Under SOP 227.02, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" that "personally affects the offender" and that is not explicitly listed in the SOP as a "non-grievable issue." <u>Id.</u>; Doc. 20-3 at 4.

The grievance procedure consists of two steps, the original grievance and the Central Office Appeal. Doc. 20-2 at 3. Under SOP 227.02, absent "good cause," original grievances must be filed within 10 days from the date the inmate knew or should have known of the facts giving rise to the grievance. Doc. 20-3 at 8. Then, if an inmate is dissatisfied with the response, he may appeal the decision to the GDC Central Office. <u>Id.</u> at 14. An appeal must be filed within seven days of an inmate receiving the CSP Warden's response. <u>Id.</u> The GDC Commissioner then has 120 days after receiving the appeal to deliver a decision to the inmate. <u>Id.</u> at 15. Only then is the grievance procedure complete. Doc. 20-2 at 5.

#### 2. *Plaintiff did not exhaust available administrative remedies.*

##### a. *Plaintiff's claims do survive under <u>Turner</u> step one.*

At step one under <u>Turner</u>, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take the plaintiff's version of the facts as true." <u>Turner</u>, 541 F.3d at 1080–82.

Defendants assert Plaintiff did not file grievances about the incidents from which the claims in the original Complaint arose—failure to receive care for his seizure on August 1, 2021, and two instances where his breathing machine became unplugged (on August 16, 2021 and August 19, 2021, respectively).  Doc. 20-1 at 7.  Plaintiff does not dispute he did not file a grievance, as required under the PLRA.  Doc. 25-1 at 1–2.  However, he argues the grievance process was unavailable to him, as no one would provide him with a grievance form while he was in isolation.  Id.

Defendants state Plaintiff was housed in the administrative segregation building from June 24, 2021 to October 30, 2021.  Doc. 20-2 at 7.  During that period of time, Warden Benton would make rounds in the building, Monday through Thursday, accompanied by the Chief Counselor or another CSP counselor.  Id.  While the counselor and Warden Benton were walking through the building, they walked by the cell doors of every inmate, and the inmates had the opportunity to request grievance forms or hand over completed forms to be processed.  Id.  Further, Defendants assert, even if Plaintiff did not ask for a grievance form at that time, he could have requested a grievance form via the intra-prison mail system.  Id. at 8.  Ms. Briana Kaigler explains she never received a letter from Plaintiff and she is unaware of any other counselor receiving a letter from Plaintiff.  Id.  Plaintiff's grievance history shows Plaintiff filed grievances before and after he filed this suit (one of which was filed while Plaintiff was in administrative segregation), but those grievances do not concern Plaintiff's claims in this action.  Id. at 6.

Plaintiff disputes Defendants' assertions.  Plaintiff states he never saw Warden Benton and the counselors walking around and only saw the officer assigned to the building.  Doc. 25-1

at 2.  Plaintiff says he asked for grievances but there were never any available in the dorm.[2]  Id. at 1–2.

Plaintiff's allegations and Defendants' allegations plainly conflict.  Plaintiff asserts no counselor or Warden ever walked through the building and, thus, Plaintiff could not receive a grievance form.  Doc. 25-1 at 2.  There is a genuine dispute of material fact, and—at step one under Turner—the Court must take Plaintiff's allegations as true.  Looking solely at Plaintiff's Response, his allegations are enough to survive a motion to dismiss for failure to exhaust his administrative remedies under the first prong of the Turner test.

> b.       Plaintiff's claims should be dismissed under Turner step two.

The parties' filings implicate a factual question.  Therefore, the Court must determine, as a factual matter, whether the grievance process was available to Plaintiff while he was in administrative segregation.

"[F]actual determinations regarding exhaustion (or lack thereof) under § 1997e(a) often pose problems for the district courts."  Womack v. Sikes, No. CV 307-042, 2008 WL 4104148, at *5 (S.D. Ga. Sept. 4, 2008).  Nevertheless, a presiding judge may act as a factfinder in resolving whether an inmate has exhausted his non-judicial remedies.  Bryant, 530 F.3d at 1374 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119–20 (9th Cir. 2003)).  Similarly, the Supreme Court has explained "discredited testimony" cannot be relied upon to resist summary judgment.  See Womack, 2008 WL 4104148 at *5 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

---

[2]   It is not clear who Plaintiff asked for a grievance form.  Given Plaintiff states Warden Benton and counselors never made rounds around the administrative segregation building and Plaintiff only ever saw the officer who worked the building, the Court presumes Plaintiff asked the unnamed officer for a grievance form.

Failure to exhaust is an affirmative defense that, like other affirmative defenses, puts the burden of proof squarely on defendants. See Presley v. Scott, 679 F. App'x 910, 912 (11th Cir. 2017) ("It is the defendant's burden to prove a plaintiff has failed to exhaust his administrative remedies, which requires evidence that the administrative remedies are available to the plaintiff."); Berger, 709 F. App'x at 542 (finding "[t]he district court misapplied the law in penalizing [plaintiff] for failing to take advantage of remedies the defendants failed to prove were available to him"); Whatley I, 802 F.3d at 1209; Turner, 541 F.3d at 1082–83; see also Abram, 759 F. App'x at 861 (remanding to determine whether administrative remedies were available to plaintiff where plaintiff alleged prison staff refused to provide grievance forms and plaintiff provided an affidavit from another inmate who witnessed plaintiff's request for forms and subsequent denial). Even when a plaintiff relies only "upon his own self-serving allegations," courts should not dismiss the action outright but should "consider[] whether a 'reasonable juror would undertake the suspension of disbelief necessary to credit the allegations.'" Womack, 2008 WL 4104148, at *6 (quoting Jeffreys v. City of New York, 426 F.3d 549, 555 (2d Cir. 2005)).

Before a court resolves disputed factual issues in a motion to dismiss, the court must ensure "the parties ha[d] sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 & n.14; see also Glenn, 706 F. App'x at 564 ("[I]f there are disputed factual issues, the court must allow the parties to develop the record . . . ."); Porter v. Sightler, 457 F. App'x 880, 882 (11th Cir. 2012); Singleton, 323 F. App'x at 785 (finding plaintiff-inmate had sufficient opportunity to develop the record when plaintiff filed "numerous pleadings, affidavits, and exhibits regarding the exhaustion issue"). Here, both parties have submitted argument or evidence on the issue of

exhaustion and the availability of the grievance process. Therefore, the parties have had a sufficient opportunity to develop the record.

Defendants have carried their burden to show the grievance procedure was available to Plaintiff at the time of the incidents. Defendants offered a declaration from Briana Kaigler, who was Chief Counselor at CSP during the time at issue in the lawsuit. Doc. 20-2. She states during the time period Plaintiff was in administrative segregation, the Warden and a counselor would make rounds around the building. Id. at 7. Ms. Kaigler states sometimes she was the counselor accompanying the Warden. Id. She also states, during these rounds, inmates could request a grievance form, receive them, and turn in completed forms. Id. As further proof the grievance process was available to Plaintiff, Defendants provided a copy of a grievance Plaintiff filed on September 16, 2021. Doc. 20-7. The filing of this grievance undercuts Plaintiff's assertion he could not file a grievance during his time in the administrative segregation building, as the September 16, 2021 grievance was filed a month and a half before Plaintiff was moved to a new building on October 30, 2021.[3] See Doc. 25-1 at 2; Doc. 20-4 at 1. Additionally, Ms. Kaigler's declaration states Plaintiff could have mailed a letter through the intra-prison mail system informing CSP counseling staff he wished to file a grievance on a particular issue. Doc. 20-2 at 8. Plaintiff does not provide a response to Ms. Kaigler's assertion he could have used this method to initiate the grievance procedure.

Plaintiff directly disputes Ms. Kaigler's description of the rounds the Warden and counselor would make. See Doc. 25-1 at 2 (referring to Ms. Kaigler's representation of the rounds as "a lie"). However, his statement that the Warden and counselor rounds never

---

[3] Plaintiff asserts the incidents giving rise to his claims in this case occurred on August 1, 2021, August 16, 2021, and August 19, 2021. Plaintiff signed his Complaint on August 19, 2021.

happened was followed by Plaintiff's assertion that he filed no grievances while held in administrative segregation—an assertion plainly contradicted by Defendants' submission of a copy of the September 16, 2021 grievance.  Furthermore, Plaintiff does not otherwise dispute Defendants' assertions the intra-prison mail system was available to him to request a grievance form.  Given the evidence provided, it appears the grievance process was available to Plaintiff.  Therefore, he has failed to exhaust his remedies as it relates to the claims from his original Complaint.

Defendants have carried their burden to show Plaintiff did not exhaust his administrative remedies.  Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss and dismiss Plaintiff's claims against Defendants.

### III.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.  Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now.  See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good

faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal

## CONCLUSION

For the foregoing reasons, I **GRANT as unopposed** Plaintiff's "Motion to Combine Additional Facts and Statement to Civil Action," and I **RECOMMEND** the Court **GRANT** Defendants' Motion to Dismiss, **DISMISS without prejudice** Plaintiff's claims against Defendants for failure to exhaust available administrative remedies, and **DIRECT** the Clerk of Court enter the appropriate judgment of dismissal and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of January, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA